UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

SUSAN CARSON,                    )
                                 )
            Plaintiff,           )
v.                               )     No. 2:15-cv-337
                                 )     Judge Phillips
HAMBLEN COUNTY, *et al.*,         )
                                 )
            Defendants.          )

## MEMORANDUM OPINION

As previously noted, this civil rights case arises from plaintiff's incarceration as a pre-trial detainee in the Hamblen County, Tennessee Jail in December 2014. Defendants Hamblen County, Tennessee, Sheriff Esco Jarnigan, and Captain Teresa Laws have filed a comprehensive motion for summary judgment [Doc. 30], with supporting documents and memoranda [Docs. 31, 49, 52]. Plaintiff Susan Carson has responded in opposition to the motion [Docs. 43, 44], and the motion is now ripe for determination.

After carefully considering the pending motion and related materials, the defendant's motion for summary judgment [Doc. 30] will be **GRANTED**.

## I.    Relevant Facts

At all relevant times, Hamblen County had a contract with a third-party medical provider, CorrectHealth, Inc., for medical services for all inmates at the Hamblen County Jail [Doc. 30-1 at ¶ 3]. These medical services are provided by licensed nurses and a supervising physician [*Id.*]. The nurses are on-site at the Jail from approximately 5:00 a.m.

until 11:00 p.m. each day and a licensed medical provider can be reached by phone when the nurses are not on-site [*Id.*]. A physician supervises the nurses, is available by phone, and makes periodic on-site visits to see inmates [*Id.*]. The CorrectHealth nurses and physicians are not employees of Hamblen County and their conduct is not controlled by Hamblen County [*Id.*].

When an inmate is booked into the Hamblen County Jail, the inmate fills out a medical questionnaire, which asks, among other things, whether the inmate is diabetic and/or on a special diet [Doc. 30-1 at ¶ 4]. A CorrectHealth nurse will confirm the diagnosis of any inmate who states that she has diabetes and the nurse will arrange appropriate treatment and medications [*Id.*]. The CorrectHealth nurse will also confirm any medication and dosages for an inmate on a prescription with the inmate's regular healthcare provider and/or pharmacy [*Id.* at ¶ 5]. The CorrectHealth nurses administer any medications, not Hamblen County correctional officers [*Id.*].

When they are onsite, the CorrectHealth nurses administer daily blood sugar tests for diabetic inmates, although the correctional officers may do so when the nurse is not present [Doc. 30-1 at ¶ 6]. The CorrectHealth nurses make regular rounds in the Jail each day [*Id.* at ¶ 7]. The correctional officers do not provide medical treatment for diabetic inmates, except for the possible administration of a blood sugar test [*Id.*].

The Hamblen County Jail has a licensed dietician who provides a meal plan for all inmates [Doc. 30-1 at ¶ 8]. If an inmate is determined to be diabetic by the medical staff, the inmate is included on a list in the kitchen at the Jail whereby all persons involved in the preparation of and delivery of the inmates' food know which inmates are to receive diabetic

2

meals [*Id*.]. The diabetic meals are separate from those of other inmates and are prepared in accordance with the dietician's instructions [*Id*.]. The correctional officers deliver the diabetic meals to the diabetic inmates, but they rely on the judgment of the dietician in establishing the diabetic meals for the diabetic inmates [*Id*.].

Plaintiff was arrested on December 18, 2014, based on an Extradition Warrant from the State of Florida [Doc. 30-7 at p. 3; Doc. 30-9]. It is undisputed that plaintiff told the booking officer that she was an insulin-dependent diabetic and that her insulin and syringes were in her purse, which was taken into custody [Doc. 30-7 at p. 4]. Plaintiff admits that she told the booking officer she was not on a special diet, as reflected on her intake medical questionnaire [*Id*.; Doc. 30-4]. Shortly after her booking, plaintiff met with Nurse Tora Epperson and they discussed her insulin types and dosages [Doc. 30-7 at pp. 4—5]. Plaintiff received a tray of food in her cell that evening, but received no medication or other treatment [*Id*. at p. 5].[1]

The Jail Log Book reflects that a CorrectHealth nurse was in the Female Annex twice in the early morning of December 19, 2014 [Doc. 30-10 at p. 2]. At 9:45 a.m., plaintiff was taken to see Nurse Epperson for an initial health assessment. Nurse Epperson noted that plaintiff claimed she "has been out of Novolin R Insulin" for a couple of days, but she showed "no signs of distress at this time" [Doc. 30-12].[2] At 1:00 p.m., Nurse

_____

[1]Plaintiff does not remember what food was on her tray [Doc. 30-7 at p. 5].
[2]Plaintiff testified that she did not have an independent recollection of taking insulin on the morning of December 18, 2014, but that it is her standard practice to do so [Doc. 30-7 at p. 3]. As she elaborated in her affidavit, "I have never not taken my insulin …; it is a habit which has kept my blood sugar stabilized since I started on the two shot a day regime back in 1985" [Doc. 43-4 at ¶ 5].

3

Epperson prescribed diabetes medications for plaintiff, ordered that her glucose levels be checked twice daily, and ordered that she be placed on the FNP (Family Nurse Practitioner) list [Doc. 30-14 at p. 1]. However, there is no evidence that plaintiff received any insulin at the Jail on December 19, 2014, and her blood sugar was not tested prior to her transport to the hospital later that evening [Doc. 43-4 at ¶ 3].

The Jail Log Book reflects that plaintiff was moved out of her cell and into the hallway for observation at 12:40 p.m. because she was getting sick [Doc. 30-10 at p. 3]. Plaintiff was placed on a mat in the hallway in view of the guard's desk, shackled to a chair, and given a milk crate lined with a plastic bag in which she vomited and urinated [Doc. 43-5 at ¶¶ 7—9]. It appears undisputed that plaintiff's condition continued to deteriorate throughout the day. At 4:30 p.m., the nurse made her rounds in the Female Annex, but she did not provide or order any medical treatment to plaintiff at this time [Doc. 30-10 at p. 4]. One of the correctional officers on duty, Victoria Reaves, states that she observed plaintiff's condition and asked Nurse Epperson why plaintiff was not being treated [Doc. 43-5 at ¶ 12].

At 10:27 p.m., the nurse returned to the Female Annex to check on plaintiff [Doc. 30-10 at p. 5]. Shortly thereafter, the nurse left the Female Annex to call the doctor, returned to the Annex and reported that the doctor was sending plaintiff to the Morristown Hamblen Health System ("MHHS") Emergency Room [*Id.*].[3] The nurse later contacted the Emergency Room and was advised that, after giving certain diabetic medications,

_____

[3]It appears undisputed that by the time plaintiff was transported to MHHS, she was "out of it" and unable to walk on her own [Doc. 43-5 at ¶ 13].

4

plaintiff's blood sugar still would not come down [Doc. 30-12]. Thus, plaintiff was admitted to MHHS in the early morning of December 20, 2014 [Doc. 30-15].

Per the MHHS medical records, plaintiff's blood was first drawn for testing at 11:20 p.m. on December 19, 2014 [Doc. 43-4 at ¶ 5]. Shortly after midnight on December 20, 2014, the lab results showed that plaintiff's blood glucose reading was 716, which was considered very high [*Id*. at ¶ 6]. Plaintiff began receiving an insulin drip at 12:30 a.m. [*Id*.]. At 1:00 a.m., plaintiff's glucose level was 554 and 534 at 2:21 a.m. [*Id*. at ¶ 7]. Plaintiff displayed classic symptoms of diabetic ketoacidosis in the Emergency Room: nausea, vomiting, dehydration, and general weakness [*Id*. at ¶ 9]. After two days of hospitalization, plaintiff was discharged to the Hamblen County Jail on December 22, 2014, with instructions for medication and a diabetic diet [Doc. 43-3 at ¶ 10].

Following her return to the Jail, plaintiff acknowledges that she received insulin injections and her blood sugar was tested daily [Doc. 30-7 at p. 8]. However, plaintiff asserts that she was not given insulin on the proper schedule and her blood sugar was not tested as ordered by the hospital [Doc. 43-4 at ¶ 3]. She further asserts that she never received a proper "diabetic" meal while she was incarcerated at the Hamblen County Jail [*Id*. at ¶ 4]. Plaintiff complains that she developed thrush in her mouth as a complication from her hospital stay and she had difficulty getting medication for her mouth while she was in the Jail [Doc. 30-7 at p. 9]. Plaintiff remained at the Jail for approximately 10 days after her discharge from MHHS until she was transferred into the custody of the State of Florida [*Id*. at p. 8].

5

Neither Sheriff Jarnigan nor Captain Laws had any direct involvement with plaintiff's medical care while she was in the Hamblen County Jail [Doc. 30-6 at ¶ 4; Doc. 30-2 at ¶ 4]. Both Sheriff Jarnigan and Captain Laws assert that they are unaware of any issues for diabetic inmates caused by the Jail policies, practices, and procedures [Doc. 30-2 at ¶ 3; Doc. 30-6 at ¶ 3].

When a Hamblen County Jail inmate is hospitalized, the inmate is guarded at all times by a correctional officer from the Jail for safety purposes [Doc. 30-2 at ¶ 5]. No one is permitted to visit the inmate, including family members or attorneys [*Id.*]. Defendants assert that this policy is for the valid penalogical reason of safety for the inmate and to prevent improper conduct [*Id.*]. While she was hospitalized, attorney Kelly Hinsley, who is plaintiff's employer, requested to see plaintiff, but he was not permitted to do so [*Id.* at ¶ 6].[4] Plaintiff claims that her chaplain was permitted to visit her while she was hospitalized [Doc. 30-7 at p. 7]. On the afternoon of December 22, 2014, plaintiff was returned to the Jail and she was permitted to meet with attorney Troy Bowlin, her present counsel [Doc. 30-7 at p. 10].

It is undisputed that plaintiff pled nolo contendere to a misdemeanor charge of trespass in the Circuit Court for Manatee County, Florida, on April 2, 2015 [Doc. 30-18].

---

[4]Although defendants make much of the fact that Mr. Hinsley does not practice criminal law, the record reflects that Mr. Hinsley provided plaintiff with legal advice on issues related to her father's estate in Florida, out of which the criminal charges against her arose [Doc. 43-6 at ¶¶ 4,6—7; Doc. 30-7 at pp. 7—8].

6

## II. Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Moore v. Phillip Morris Cos.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002). "Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. 317). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Anderson*, 477 U.S. at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*,

7

886 F.2d 1472, 1479-80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## III.     Analysis

Plaintiff has asserted the following claims:  violation of her constitutional rights to adequate medical care and food [Doc. 1 at ¶¶ 49—80]; a negligence claim for failure to receive adequate medical care[5] [*Id*. at ¶¶ 82—87]; a violation of her constitutional right to access to her attorney [*Id*. at ¶¶ 89—92]; a violation of the holding in *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985) [*Id*. at ¶¶ 94—97]; ratification by Hamblen County of the violation of plaintiff's rights [*Id*. at ¶¶ 99—101]; and a violation of plaintiff's right to be free from a state-created danger [*Id*. at ¶¶ 103—107].

### A.     Qualified Immunity

Sheriff Jarnigan and Captain Laws first argue that they are both entitled to qualified immunity because they cannot be liable for a mere failure to act or knowledge of an alleged

---

[5]Count IV asserts a negligence claim against Sheriff Jarnigan and Captain Laws for failing to ensure that plaintiff received adequate medical care [Doc. 1 at ¶¶ 82—87].  However, as briefly noted by defendants, plaintiff may not assert a negligence claim under § 1983 [Doc. 31 at p. 13, n.2].  *See Daniels v. Williams*, 474 U.S. 327, 328 (1986) (due process is not implicated by the negligent act of an official causing unintended loss of or injury to life, liberty, or property).  Plaintiff has not responded to this argument or addressed this purported negligence claim at all.  While her failure to respond may be deemed to be a waiver of any opposition to the relief sought, *see* E.D. Tenn. L.R. 7.2, the Court further finds that, to the extent such a claim has been asserted, defendants are entitled to summary judgment.  Fed. R. Civ. P. 56(e)(3).

8

constitutional violation by subordinates [Doc. 31 at pp. 10—12]. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation"; it is "an *immunity from suit* rather than a mere defense to liability, and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original). The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Humphrey v. Mabry*, 482 F.3d 840, 847 (6th Cir. 2007) (citation omitted). "Government officials who perform discretionary functions are generally protected from liability for civil damages as long as their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Holzemer v. City of Memphis*, 621 F.3d 512, 518 (6th Cir. 2010) (citations omitted).

To determine whether a government official is entitled to qualified immunity, the court must determine: (1) whether the plaintiff has shown the violation of a constitutional right; and (2) whether the right was clearly established at the time. *Pearson v. Callahan*, 555 U.S. 223, 227 (2009).[6] There is no requirement that this inquiry be performed in sequence, *id.*, and if a plaintiff fails to establish any one element, the defendant's request

---

[6]The Sixth Circuit describes the qualified immunity test as a three-step inquiry: (1) whether the facts viewed in the light most favorable to the plaintiff show that a constitutional violation has occurred; (2) whether the violation involved a clearly established right of which a reasonable person would have known; and (3) whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights. *Meals v. City of Memphis*, 493 F.3d 720, 729 (6th Cir. 2007) (quoting *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003)). The Sixth Circuit has opined that this "three-step approach correctly encompasses the Supreme Court's [two-step] approach to qualified immunity claims and serves to ensure government officials the proper protection from civil suit under the law." *Meals*, 493 F.3d at 729, n.7.

9

for qualified immunity must be granted. *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005).

Inmates asserting an Eighth Amendment violation resulting from inadequate medical care or food must prove that the defendants acted with "deliberate indifference" regarding an imminent risk of serious harm to the inmate.[7] *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). In addition, claims of deliberate indifference require "a showing of objective and subjective components." *Phillips v. Roane Cty.*, 534 F.3d 531, 539 (6th Cir. 2008). The objective component of the test requires a plaintiff to demonstrate "a 'sufficiently serious' medical need such that [the plaintiff] is 'incarcerated under conditions posing a substantial risk of serious harm.'" *Ford v. Cty. of Grand Traverse*, 535 F.3d 483, 495 (6th Cir. 2008) (quoting *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2004)). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (quoting *Blackmore,* 390 F.3d at 897). Defendants have not disputed that plaintiff's diabetes was a serious medical condition.

To establish the subjective component of a deliberate indifference claim, the plaintiff must establish that "the official knows of and disregards an excessive risk to

---

[7]The Sixth Circuit has held that "the deliberate and unnecessary withholding of food that is essential to normal health can constitute deliberate indifference to medical needs that violates the Eighth Amendment." *Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009), *cert. denied*, 563 U.S. 969 (2011). Proof of such a claim is based on the same elements as a claim for denial of medical care. *Id.* at 801—802.

inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Cardinal*, 564 F.3d at 802; *see Harrison*, 539 F.3d at 518 (deliberate indifference is where an official knows of and disregards an excessive risk to inmate health or safety).

Both individual defendants correctly note that § 1983 liability must be based on "active unconstitutional behavior," rather than a mere failure to act [Doc. 31 at p. 10 (citing *Doe v. City of Roseville*, 296 F.3d 431, 440 (6th Cir. 2002), *cert. denied*, 537 U.S. 1232 (2003))]. Indeed, it is well settled that government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (plaintiff must show that each individual official has violated the Constitution through the official's own actions). "In other words, a supervisor cannot be held liable simply because he or she was charged with overseeing a subordinate who violated the constitutional rights of another. … Consequently, a mere failure to act will not suffice to establish supervisory liability." *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) (citation omitted).

Plaintiff has presented no evidence that Sheriff Jarnigan or Captain Laws played any role in the medical care or food provided to her. Thus, plaintiff cannot show any direct responsibility by these officers. Further, there is no evidence that either Sheriff Jarnigan or Captain Laws knew of and disregarded an excessive risk to plaintiff's health or safety. Indeed, there is virtually no evidence that either individual had any knowledge of plaintiff's

11

incarceration at all.[8]  Therefore, plaintiff cannot show that defendants had a sufficiently culpable state of mind in denying plaintiff adequate medical care or food.[9]

Plaintiff responds that Sheriff Jarnigan implemented policies that were likely to deprive her of necessary medical treatment for hours or days by requiring such care to first be directed by medical personnel before it could be administered [Doc. 44 at pp. 20—22]. However, it is not unconstitutional for municipalities to hire independent medical professionals, such as CorrectHealth, to provide on-site medical care to prisoners in their jails. *See Graham ex rel. Estate of Graham v. Cty. of Washtenaw*, 358 F.3d 377, 384 (6th Cir. 2004).  Further, non-medical staff are entitled to assume that members of the medical staff are performing their duties properly unless they have reason to know otherwise. *Id.*; *Robbins v. Black*, 351 F. App'x 58, 63 (6th Cir. 2009); *see Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241, 1248-1250 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990).  Plaintiff has presented no evidence that Sheriff Jarnigan or Captain Laws knew or should have known that CorrectHealth staff were not properly performing their duties.  Nor is there any

---

[8]The only evidence in the record of any contemporaneous knowledge of plaintiff's incarceration is plaintiff's testimony that Captain Laws was present at some point while plaintiff was hospitalized [Doc. 30-7 at p. 7].

[9]Plaintiff suggests that qualified immunity is not available to Sheriff Jarnigan and Captain Laws because of the statutorily imposed, and therefore non-discretionary, duties to provide adequate food and bedding as Sheriff and Jail Administrator [*see* Doc. 44 at pp. 16—19, 26].  However, plaintiff has asserted claims against Sheriff Jarnigan and Captain Laws in their individual, rather than official, capacities.  *See* Doc. 17 (dismissing official capacity claims against defendants Jarnigan and Laws).  Thus, plaintiff's argument and authorities regarding non-delegable duties pertain to official capacity claims and are inapposite to this case.  *See Kentucky v. Graham*, 473 U.S. 159, 167 (1985) (qualified immunity is available only in a personal capacity suit); *Biggs v. Meadows*, 66 F.3d 56, 61 (6th Cir. 1995) (same).

evidence in the record that other Hamblen County Jail inmates with diabetes have suffered similar complications as plaintiff.

Plaintiff also argues that the individual defendants are liable for a failure to train the Jail guards as to signs or symptoms they should look for and when to take action when an inmate needs medical treatment [Doc. 44 at pp. 23—24]. However, "a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264 (2000) (internal quotation marks omitted). Thus, "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *See id.*; *Phillips*, 534 F.3d 543. Plaintiff has presented no evidence that Sheriff Jarnigan or Captain Laws authorized, approved, or knowingly acquiesced in the denial of medical treatment or food to her. *See Nouri v. Cty. of Oakland*, 615 F. App'x 291, 297 (6th Cir. 2015) (sheriff cannot be individually liable for a deliberate indifference claim where plaintiff cannot show that the sheriff had any knowledge of the harm to the plaintiff potentially caused by his own inaction).

For all of these reasons, the Court finds that plaintiff cannot show that defendants Jarnigan and Laws were deliberately indifferent to plaintiff's serious medical need. Accordingly, defendants Jarnigan and Laws are therefore entitled to the defense of qualified immunity.

B.    Access to Attorney

Count V of the complaint alleges that plaintiff was denied access to consult with her attorney, Mr. Hinsley, while she was hospitalized at MHHS, in violation of the Fifth Amendment to the United States Constitution and Tenn. Code Ann. § 41-4-114 [Doc. 1 at ¶¶ 89—92]. Relying on well-settled authority, defendants argue that this claim cannot succeed because plaintiff pled *nolo contendere* to the underlying criminal proceeding in Florida [Doc. 31 at p. 17]. In response, plaintiff does not address this authority at all, but complains that Captain Laws cannot articulate a specific penological interest or safety threat to justify the policy which prevents hospitalized inmates from meeting with their attorneys [Doc. 43 at p. 6; Doc. 44 at pp. 13—16]. Thus, plaintiff contends that the policy is an unconstitutional violation of her rights.

A claim for damages under § 1983 for denial of access to an attorney cannot be maintained in the absence of a demonstration that the criminal proceeding in state court was "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey*, 512 U.S. 477, 486—87 (1994); *Cumpian v. Nye*, No. 97-4144, 1998 WL 791732, at *1 (6th Cir. 1998) (quoting *Heck*). It is undisputed, as evidenced by the documents filed in the record, that plaintiff pled *nolo contendere* to the charges against her in Florida and this conviction has not been overturned through other legal processes [Doc. 30-18]. Accordingly, plaintiff cannot maintain a § 1983 claim for denial of access to an attorney for this charge. *See Shelton v. City of Taylor*, 92 F. App'x 178, 183 (6th Cir. 2004); *Lyle v. Jackson*, 49 F. App'x 492,

14

494 (6th Cir. 2002). Moreover, plaintiff has not alleged or shown that she suffered any "actual injury" from the denial of access to her attorney while she was hospitalized. *See Lewis v. Casey*, 518 U.S. 343, 351—53 (1996). Plaintiff does not dispute that she was permitted to meet with her current counsel at the Jail after she was released from MHHS and she has vigorously pursued her claims against the instant defendants in this and other courts [Docs. 52-1, 52-2]. Defendants are entitled to summary judgment on this claim.

C.     State-Created Danger

Count VIII of the complaint alleges that defendants violated plaintiff's constitutional right to be free from state-created danger as guaranteed by the Fourteenth Amendment [Doc. 1 at ¶¶ 103—107]. Defendants briefly argue that such a claim is not available because plaintiff has not alleged harm from a private individual [Doc. 31 at p. 20, n.3]. Plaintiff has not responded to this argument at all and has therefore waived any opposition to the relief sought. E.D. Tenn. L.R. 7.2.

The Due Process Clause does not "require [] the State to protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). One exception to this rule recognized by the Sixth Circuit, the "state-created danger" exception, states that "[w]hen the state 'cause[s] or greatly increase[s] the risk of harm to its citizens … through its own affirmative acts,' it has established a 'special danger' and a corresponding duty to protect its citizens from that risk." *Koulta v. Merciez*, 477 F.3d 442, 445 (6th Cir. 2007) (quoting *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998)). A plaintiff asserting a claim under the "state-created danger" exception must show: "(1) an affirmative act by the state

15

which either created or increased the risk that the plaintiff would be exposed to an act of violence by a third party; (2) a special danger to the plaintiff wherein the state's actions placed the plaintiff specifically at risk, as distinguished from a risk that affects the public at large; and (3) the state knew or should have known that its action specifically endangered the plaintiff." *Jones v. Reynolds,* 438 F.3d 685, 690 (6th Cir. 2006), *cert. denied*, 549 U.S. 1166 (2007) (quoting *Cartwright v. City of Marine City,* 336 F.3d 487, 493 (6th Cir. 2003)).

Thus, the state-created danger exception requires plaintiff to allege that she was exposed to an act of violence by a third party because of an affirmative act by a Hamblen County employee. *See Jones*, 438 F.3d at 696. Plaintiff has not done so, nor has she presented any authority that the third party requirement is unnecessary. Accordingly, defendants are entitled to summary judgment on this claim.

> D.    Liability of Hamblen County

It is well settled that a municipality may not be held liable under 42 U.S.C. § 1983 "for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* Accordingly, to succeed on a municipal liability claim under § 1983, a plaintiff "must demonstrate that the alleged federal violation occurred because of a municipal policy or custom." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell*, 436 U.S. at 694). Put another way, for Hamblen County to be liable, plaintiff must

prove that a constitutional violation occurred and that the County is responsible for it. *Graham*, 358 F.3d at 382.

Hamblen County first argues that no county official violated plaintiff's constitutional rights by knowingly disregarding a serious need for medical treatment [Doc. 31 at pp. 20—21]. Instead, the County officials relied on the judgment of the CorrectHealth nurses and assumed that they were performing their duties. Plaintiff responds that Hamblen County had a non-delegable duty to provide adequate medical care while she was incarcerated [Doc. 44 at pp. 28—29]. As set forth above, plaintiff has presented no evidence that any County official knowingly disregarded her serious need for medical treatment or food. Further, plaintiff has presented no evidence that any County official delayed or denied her access to medical care or intentionally interfered with any medical treatment. Thus, plaintiff has not presented any evidence of a constitutional violation by any Hamblen County official regarding her right to adequate medical care or food while she was incarcerated.

Assuming that plaintiff could show a constitutional violation by a Hamblen County official, Hamblen County argues that it did not have any policy, practice, or procedure that caused the violation [Doc. 31 at pp. 22—24]. Although not clearly articulated as such, plaintiff seems to argue that the "policy" at issue is that medical care in the Jail, including the administration of medication, and diabetic meals are only provided upon the direction of CorrectHealth personnel [*see* Doc. 44 at pp. 7, 12].[10]

---

[10]Plaintiff also complains of Hamblen County's policy which prohibits a hospitalized inmate from consulting with any visitors, including an attorney, for security reasons [Doc. 44 at pp. 13—16].

17

It is worth emphasizing that plaintiff must present sufficient facts to establish that the alleged constitutional violation happened "*because of*" Hamblen County's policy of deferring to the medical judgment of CorrectHealth.  *See Graham*, 358 F.3d at 383 (emphasis added).  This stringent standard is "necessary to avoid *de facto respondeat superior* liability explicitly prohibited by *Monell*." *Doe,* 103 F.3d at 508.  According to the Sixth Circuit, a plaintiff can show that a municipality has an illegal policy or custom by demonstrating one of the following: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess*, 735 F.3d at 478.

The Sixth Circuit has held that municipalities may "hire independent medical professionals to provide on-site health care to prisoners in their jails," *Graham*, 358 F.3d at 384, and "[n]on-medical staff are entitled to assume that members of the medical staff are performing their duties properly unless they have reason to know otherwise." *Robbins*, 351 F. App'x at 63.  Thus, Hamblen County's policy to provide medical care to its inmates through CorrectHealth and to rely upon their judgments is not an illegal official policy. There is no evidence that Hamblen County officers knew that CorrectHealth nurses were not performing their duties correctly or that there were prior instances of deliberate indifference to serious medical needs.  Assuming that plaintiff did suffer a constitutional

---

However, as set forth above, by virtue of plaintiff's *nolo contendere* plea, she has suffered no actual injury from this policy.

violation, that violation "resulted from factors other than a faulty [County policy]." *City of Canton v. Harris,* 489 U.S. 378, 390–91 (1989) (citations omitted); *Graham,* 358 F.3d at 384. There can be no municipal liability where "an otherwise sound program has occasionally been negligently administered." *Id.* at 391. The fact that individual actors may "occasionally make mistakes ... says little about the ... legal basis for holding the [County] liable." *Id.*

Plaintiff also suggests that Hamblen County failed to train Jail officers to recognize symptoms of and respond to an inmate in medical distress [Doc. 44 at p. 23]. As defendants note, the inadequacy of police training may be the basis of municipal § 1983 liability "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton,* 489 U.S. at 388. Plaintiff must show that an identified deficiency in the County's training "actually caused the … officers' indifference to her medical needs." *Id.* at 391. The Sixth Circuit has required the plaintiff to prove "three distinct facts" for such a claim: "that a training program is inadequate to the tasks that the officers must perform; that the inadequacy is the result of the city's deliberate indifference; and that the inadequacy is 'closely related to' or 'actually caused' the plaintiff's injury." *Alman v. Reed,* 703 F.3d 887, 903 (6th Cir. 2013) (quoting *Hill v. McIntyre,* 884 F.2d 271, 275 (6th Cir. 1989)). In order to demonstrate deliberate indifference in this context, plaintiff can show "prior instances of unconstitutional conduct demonstrating that the County has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Fisher v.*

*Harden*, 398 F.3d 837, 849 (6th Cir.), *cert. denied*, 546 U.S. 1075 (2005) (citations omitted). Plaintiff has made no such showing.

In the instant case, Captain Laws testified that Jail officers "have no medical training" and will call a nurse "if they feel like something's off or if an … that inmate tells them" [Doc. 43-16 at p. 148]. Similarly, Lieutenant Hambrick testified that "we're not medical. We don't have any…medical training so it's basically we're calling the nurse" [Doc. 43-14 at p. 98]. Lieutenant Hambrick states that correctional officers may administer blood sugar tests if directed to do so by CorrectHealth staff [Doc. 30-1 at ¶ 6], and the Court can reasonably infer that they have been trained to do so. However, it is undisputed that the officers have no other role in the treatment of diabetic inmates [*Id.* at ¶ 7]. This limited information does not identify any insufficiencies in the training for correctional officers, or how the officers' actions caused plaintiff's injury. Nor has plaintiff presented any evidence showing that Hamblen County possessed actual knowledge indicating a deficiency with the training (or lack thereof) of their Jail officers. *See Heyerman v. Cty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012). Further, there is nothing in the record to suggest that Hamblen County officials had a history of providing inadequate medical treatment for its inmates. In short, plaintiff has only provided her unsupported allegation that Hamblen County had an inadequate training policy that caused her injury. Unsupported allegations are plainly insufficient to create genuine issues of material fact. *Celotex*, 477 U.S. at 324; *Curtis*, 778 F. Supp. at 1423. To the extent that plaintiff has

20

asserted a failure to train claim against Hamblen County, the County is entitled to summary judgment on that claim.[11]

Finally, the Court notes that the complaint alleges that Hamblen County ratified the violations of plaintiff's rights [Doc. 1 at ¶¶ 99—101]. Neither party has addressed this theory of § 1983 liability. Such a theory requires proof that Hamblen County policymakers approved a subordinate's decision and the basis for it. *Feliciano v. City of Cleveland*, 988 F.2d 649, 656 (6th Cir.), *cert. denied*, 510 U.S. 826 (1993) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 130 (1988). Plaintiff must show more than acquiescence to support this theory; it requires affirmative approval of a particular decision made by a subordinate. *Id.* Moreover, plaintiff would also have to prove that the ratification was a "moving force" in causing the constitutional violation. *Id.* at 656, n.6. To the extent that this theory has been sufficiently alleged, the Court finds that there is a complete absence of evidence to support such a theory of recovery.

---

[11]As noted above, Count VI of the complaint asserts a claim "[i]n accordance with *Grandstaff*," against Hamblen County "based on inadequate training of Defendants and the Counties [sic] policy/custom of dangerous recklessness" [Doc. 1 at ¶ 94 (citing *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985))]. It is unclear how the defendants' failure to comply with a non-binding case could constitute a cause of action and this has not been addressed by either party. Nevertheless, the Court does not interpret this claim as alleging anything more than a failure to train claim under § 1983 as discussed above.

21

## IV.    Conclusion

For the reasons set forth herein, the Court finds that there are no genuine issues of material fact on the present claims.  Defendants' motion for summary judgment [Doc. 30] will be **GRANTED** and an appropriate order will be entered.

    s/ Thomas W. Phillips
SENIOR UNITED STATES DISTRICT JUDGE